In the Matter of HELENA HOLLAND, Doing Business as " HOLLAND VOCATIONAL SERVICE ", Appellant, against EDWARD W. EDWARDS et al., as Members of the State Commission Against Discrimination, Respondents.

In the Matter of STATE COMMISSION AGAINST DISCRIMINATION, Respondent, against HELENA HOLLAND, Doing Business as " HOLLAND VOCATIONAL SERVICE ", Appellant.

Argued November 24, 1953; decided April 23, 1954.

*William E. Vogel* and *George I. Harris* for appellant. I. The commission had no jurisdiction of the subject matter of the complaint because the complaint was not made by a person aggrieved. (*Pratt* v. *La Guardia,* 182 Misc. 462, 268 App. Div. 973, 294 N. Y. 842; *Woollcott* v. *Shubert,* 217 N. Y. 212; *Grannon* v. *Westchester Racing Assn.,* 16 App. Div. 8, 153 N. Y. 449; *Fulton Light Heat & Power Co.* v. *Seneca River Power Co.,* 119 Misc. 729; *Matter of Ball,* 94 Misc. 112; *People ex rel. Ambroad Equities* v. *Miller,* 264 App. Div. 262, 289 N. Y. 339; *Ex parte Levitt,* 302 U. S. 633; *Tileston* v. *Ullman,* 318 U. S. 44; *Matter of Dimentstein [Frankle],* 184 Misc. 126; *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164; *Matter of Walter,* 75 N. Y. 354; *Matter of Phillips,* 60 N. Y. 16; *Matter of Quinby* v. *Public Service Comm.,* 223 N. Y. 244; *People ex rel. New York Rys. Co.* v. *Public Service Comm.,* 223 N. Y. 373.) II. Respondent made no inquiries which constitute an unlawful employment practice. (*People* v. *Briggs,* 193 N. Y. 457; *New York State Labor Relations Bd.* v. *Shattuck Co.,* 260 App. Div. 315.) III. The employment application form used by the respondent is not unlawful. IV. The commission's findings of fact are not sufficient to support the commission's conclusions of law. (*Securities Comm.* v. *Chenery Corp.,* 318 U. S. 80, 332 U. S. 194; *Matter of Scudder* v. *O'Connell,* 272 App. Div. 251; *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *Schoerer* v. *Connolly,* 44 Misc. 222; *Fowler* v. *Bushby,* 69 Misc. 341; *Curtis* v. *Corbitt,* 25 How. Prac. 58; *Grossman Mfg. Co.* v. *New York Central R. R. Co.,* 181 App. Div. 764; *Matter of Shearer* v. *Niagara Falls Power Co.,* 242 N. Y. 70; *United States* v. *Baltimore & O. R. R. Co.,* 293 U. S. 454; *Saginaw Broadcasting Co.* v. *Federal Communications Comm.,* 96 F. 2d 554.) V. There is no basis for certain of the affirmative action provisions of the order of the commission. (*Matter of Corporate Employment Service* v. *Moss,* 261 App. Div. 586, 286 N. Y. 601; *Matter of Small* v. *Moss,* 279 N. Y. 288; *Matter of International Ry. Co.* v. *Public Service Comm.,* 264 App. Div. 506, 289 N. Y. 830; *Acorn Employment Service* v. *Moss,* 292 N. Y. 147; *Winters* v. *New York,* 333 U. S. 507; *Connally* v. *General Constr. Co.,* 269 U. S. 385; *People* v. *Briggs,* 193 N. Y. 457; *Ivory* v. *Edwards,* 278 App. Div. 359, 304 N. Y. 949.)

*Henry Spitz* and *Milton Rosenberg* for respondent. I. The commission has jurisdiction over the person of Holland and the subject matter of the proceeding. (*Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256.) II. The complainant is a proper complainant under the law as a person claiming to be aggrieved. III. Holland made unlawful inquiries to Lehds in connection with prospective employment. IV. The commission is an expert body charged with initial determination of the application of a broad statutory term, and substantial weight must be given to its interpretation as to what are unlawful pre-employment inquiries under the law. (*Red Hook Cold Storage Co.* v. *Department of Labor,* 295 N. Y. 1.) V. The evidence supports the commission's findings. VI. The commission's findings of fact are specific and detailed, show the actual grounds of decision, comply with the statute and provide the necessary basis for judicial review. (*Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488.) VII. The cease and desist provisions of the order relate directly to unlawful employment practices which the commission found that respondent had engaged in. VIII. The affirmative action provisions of the order constitute a reasonable exercise of the judgment of the commission to effectuate the purposes of the Law Against Discrimination. IX. The law's regulation of employment agencies and its prohibitions against the use of particular pre-employment procedures are reasonable exercises of the State's police power. (*Woollcott* v. *Shubert,* 217 N. Y. 212; *Olsen* v. *Nebraska,* 313 U. S. 236; *Railway Mail Assn.* v. *Corsi,* 326 U. S. 88.)

Fuld, J. Representing as it does the first instance of a litigated controversy, after a hearing, under the Law Against Discrimination (Executive Law, art. 15), this appeal is of more than passing significance.

Helena Holland, appellant herein, doing business as the Holland Vocational Service, operates an employment agency for secretaries and clerical workers in New York City. On September 18, 1951, a young woman, Rue Lehds by name, went to the agency in response to a newspaper advertisement for a secretary. She was given an application to fill out which included, among other items, the question, " Family Name or

Your Name ever Changed Legally or otherwise.'' Miss Lehds answered by noting that her family name had been '' Winston.''

After looking over the application as filled out, appellant proceeded to question Miss Lehds concerning the religion of one of her former employers, the maiden name of the latter's wife — '' What sort of name is that?'' — and the applicant's national origin, as reflected by her name and schooling. Although, according to Miss Lehds, there was some discussion of a prospective position — with an employer other than appellant — nothing further came of the interview.

Upon Miss Lehds' complaint, respondent, the State Commission Against Discrimination, conducted a preliminary investigation and then, after unsuccessful resort to the statutory procedure of '' conference, conciliation and persuasion '', held a hearing in accordance with the provisions of the Law Against Discrimination (Executive Law, § 297). Appellant made a statement in her behalf in the preliminary investigation and filed an answer to the complaint. At the hearing, however, she withdrew before any evidence was taken, electing to make no defense and to conduct no cross-examination of the witnesses who testified in support of the complaint.

At the conclusion of the hearing, the commission decided that the question as to change of name in the application form and the oral inquiries violated subdivision 3 of section 296 of the statute. That subdivision (renum. by L. 1952, ch. 285, as § 296, subd. 1, par. [c]) declares it to be an unlawful practice for any employer or employment agency, as defined in the Law, '' to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to race, creed, color or national origin, or any intent to make any such limitation, specification or discrimination, unless based upon a bona fide occupational qualification.''

To enforce its determination, the commission issued an order directing appellant to '' cease and desist '' from making any inquiries respecting race, creed, color or national origin when interviewing, or receiving applications from, persons seeking employment; from giving consideration to such factors in making evaluations of applicants for referral to prospective

employers; and from using an application form which includes any inquiry or reference concerning an applicant's change of name, unless first submitted to, and approved by, the commission. Appellant was further directed not to furnish any information to prospective employers as to an applicant's race, creed, color or national origin, and not to accept any job orders containing any limitation, specification or discrimination on that score. The order also required appellant to maintain and make available to the commission, for a period of one year, records of the action taken on all employment applications and employers' job orders, and to make available to the commission all other records relating to her business, until such time as the commission should determine that she was complying with the statute.

It is worth noting — particularly in view of section 298 of the Executive Law — that no objection was urged before the commission as to any finding of fact, conclusion of law or requirement of the order, and no change or modification of such order was sought of the commission.

Shortly after the determination was made, proceedings were initiated both by the commission to compel compliance with its order and by appellant to review the commission's decision. The Supreme Court at Special Term granted the commission's application and denied appellant's petition. The Appellate Division affirmed by a divided court, the minority dissenting with respect to the direction that appellant maintain records of the action taken on employment applications and job orders.

At the outset, we observe that the legislature created the Commission Against Discrimination to effectuate its declared policy of combating the practice of discrimination on the basis of race, creed, color or national origin, as a threat to our democratic institutions (Executive Law, § 290). Specified discriminatory practices in the field of employment were denominated "unlawful employment practices," and the commission was empowered to take appropriate action to eliminate and prevent such practices (§§ 290, 296, 297).[1] Upon complaint by

---

1. Amendments enacted in 1952 (L. 1952, chs. 284, 285), not applicable to this case, enlarged the scope of the statute and changed the description of the prohibited practices to "unlawful discriminatory practices."

"Any person claiming to be aggrieved", the commission is authorized to conduct a hearing, after first attempting to eliminate the practice complained of "by conference, conciliation and persuasion." If, upon all the evidence at the hearing, the commission finds that the respondent has engaged in an unlawful employment practice as defined in the statute, it is authorized to issue an order requiring the respondent to "cease and desist from such unlawful employment practice and to take such affirmative action * * * as, in the judgment of the commission, will effectuate the purposes of this article" (§ 297). Provision is made for judicial review and enforcement of orders of the commission, the statute announcing that "The findings of the commission as to the facts shall be conclusive if supported by sufficient evidence on the record considered as a whole" (§ 298).

Judicial review of findings made by an administrative agency such as this commission is, of course, limited to the question whether the findings are, upon the entire record, supported by evidence "so substantial that from it an inference of the existence of the fact found may be drawn reasonably." (*Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256, 273; see, also, *Matter of McCormack* v. *National City Bank*, 303 N. Y. 5, 9; *Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327, 332.) There can be no doubt that there was here present the requisite substantial evidence to support the commission's findings that appellant's inquiries "expressed a [prohibited] limitation, specification or discrimination as to creed or national origin." In accordance with the statutory declaration (§ 298), those findings are, therefore "conclusive".

Appellant, however, argues that neither the inquiry as to change of name nor any of the questions put by her in the oral interview necessarily reflected a discriminatory purpose or design. And it is quite true, as the Appellate Division observed, that the inquiry as to change of name might, in another setting, "be entirely removed from any purpose of discrimination" and might, under other circumstances, be regarded as "quite appropriate" (282 App. Div. 353, 359). Nevertheless, in this case, it was entirely reasonable for the commission to conclude

that appellant's inquiries, when considered as a whole and in context, contravened the statute.

One intent on violating the Law Against Discrimination cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discriminatory practices in ways that are devious, by methods subtle and elusive — for we deal with an area in which "subtleties of conduct * * * play no small part". (Cf. *Labor Bd.* v. *Express Pub. Co.,* 312 U. S. 426, 437.) All of which amply justifies the legislature's grant of broad power to the commission to appraise, correlate and evaluate the facts uncovered.

In the proceedings before the commission, appellant challenged the agency's jurisdiction upon the ground that she had interviewed complainant for a position in her own office, and that, as an employer of less than six persons, she was not subject to the provisions of the statute (§ 292, subd. 5). The commission found the fact to be otherwise; it expressly stated, in accordance with complainant's testimony, that the interview related to a position with an employer other than appellant. Appellant has apparently abandoned that contention on this appeal.

A further objection to jurisdiction, not presented to the commission, is, however, now advanced, the new claim being that the complainant could not be considered a person "aggrieved" within the meaning of the statute (§ 297), since there is no evidence or finding that she was refused a referral because of discrimination on the part of appellant. But in view of the explicit statutory direction that "No objection that has not been urged before the commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances" (§ 298), and since there is not even a suggestion of such "circumstances", the objection "is not open for review by a court". (*Labor Bd.* v. *Cheney Lumber Co.,* 327 U. S. 385, 389; see, also, *May Stores Co.* v. *Labor Bd.,* 326 U. S. 376, 386, n. 5.) In the *Cheney Lumber* case (*supra,* 327 U. S. 385), the Supreme Court explicitly ruled — under an identical provision of statute (National Labor Relations Act, § 10, subd. [e], U. S. Code, tit. 29, § 160, subd. [e]) — that an objection

not advanced until after the agency seeks judicial enforcement of its order " came too late " (p. 388). " We can say ", wrote the court (p. 389), " that it ' gives emphasis to the salutary policy adopted by § 10 (e) of affording the Board opportunity to consider on the merits questions to be urged upon review of its order.' * * * Justification of such an order, which necessarily involves consideration of the facts which are the foundation of the order, is not open for review by a court if no prior objection has been urged before the case gets into court and there is a total want of extraordinary circumstances to excuse ' the failure or neglect to urge such objection * * *.' Congress desired that all controversies of fact, and the allowable inferences from the facts, be threshed out, certainly in the first instance, before the Board. That is what the Board is for."

In any event, though, it is clear that the commission acted within its jurisdiction in entertaining the complaint here involved. It properly regarded the complaining witness as a person " aggrieved " by inquiries directed to her in violation of the statute, even though there may have been no actual refusal of a referral. The proscribed inquiry is thus itself declared an unlawful employment practice by the statute, whether or no the applicant be denied employment or referral.

The only other objection urged by appellant in this court concerns particular directives contained in the order issued by the commission. The Executive Law authorizes that body to devise remedies which it deems appropriate to " effectuate " the legislative policy against discrimination and to prevent future violations by a proven transgressor (§ 297). The commission — as in the case of other agencies under comparable statutes — " has wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices " in question, " and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist." (*Siegel Co.* v. *Trade Comm.*, 327 U. S. 608, 611, 612–613; see, also, *Labor Bd.* v. *Cheney Lumber Co.*, supra, 327 U. S. 385, 388; *Federal Trade Comm.* v. *Ruberoid Co.*, 343 U. S. 470, 473.) However, we do not consider whether any subdivision of the commission's order offends on that score.

As already noted, the objection, not having been made until after the commission had gone into court to secure enforcement of its order, came too late. (*Supra,* pp. 45–46; see Executive Law, § 298; *Labor Bd.* v. *Cheney Lumber Co., supra,* 327 U. S. 385, 388–389.) Decision on questions not now reviewable should await a case that presents them.

The order of the Appellate Division should be affirmed.

FROESSEL, J. (concurring). We concur for affirmance, and in large measure agree with Judge FULD. This is not to say, however, that in another setting and under other circumstances we would approve in its entirety the order of the commission.

Using the form of application which includes the question whether applicant's name was " ever Changed Legally or otherwise " is not in itself objectionable. Women change their names by reason of marriage. An applicant may have been convicted of crime, adjudged a bankrupt or committed some act of misconduct which he may seek to conceal from an employer by a change of name. It may be noted that similar questions as to change of name are contained in applications for admission to practice in the Supreme Court of the United States, in applications of the Department of Civil Service of the State of New York, and in questionnaires employed by the Character Committee of the Appellate Division, established pursuant to section 90 of the Judiciary Law, rule 1 of the Rules of Civil Practice, and our own Rules VIII and IX for admission of attorneys.

However, under the circumstances presented by this record, and in the absence of objection under section 298 of the Executive Law, we may not disturb the determination of the commission that the oral and written inquiries " taken together " constituted an unlawful employment practice. Petitioner had every opportunity to present her evidence, contentions and objections to the commission, but she chose not to take full advantage of that opportunity. She may not now ask us to consider objections that have not been urged before the commission, unless her failure or neglect to urge them shall be excusable because of extraordinary circumstances, which are not present here (*Labor Bd.* v. *Cheney Lumber Co.,* 327 U. S. 385).

As to the directives concerning affirmative action, had objection been timely made by petitioner, we would have grave doubt as to the propriety of subdivision e, which orders petitioner, and without a time limitation, to submit to the commission all job orders "which raise a question" whether there was a violation of section 296; and to subdivisions f and h only because they were not limited to a reasonable time as was done in subdivision g. In any event, and especially because of their penal aspects (§ 299), such directives could not be unreasonably prolonged, in which event an article 78 proceeding would lie to compel appropriate action (*Bohling* v. *Corsi*, 306 N. Y. 815).

LEWIS, Ch. J., and DESMOND, J., concur with FULD, J.; FROESSEL, J., concurs for affirmance in a separate memorandum in which CONWAY, DYE and VAN VOORHIS, JJ., concur.

Order affirmed.